# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

EMMANUEL SMITH,                    )
                                   )
            Plaintiff,             )
                                   )
v.                                 )        No.:   3:07-CV-150
                                   )               (VARLAN/GUYTON)
USF HOLLAND, INC.,                 )
                                   )
            Defendant.             )


## MEMORANDUM AND ORDER

Plaintiff Emmanuel Smith ("Plaintiff") filed this civil action against Defendant USF Holland, Inc. ("Defendant") pursuant to 42 U.S.C. § 1981 ("Section 1981") and the Tennessee Humans Rights Act ("THRA"). [*See* Doc. 1.] This case is before the Court on Defendant's Motion for Summary Judgment. [Doc. 17.] In support of its motion, Defendant contends: 1) that Plaintiff's claims under the THRA are time-barred and 2) that Plaintiff has failed to present sufficient evidence to establish the *prima facie* case or pretext for his THRA and Section 1981 claims. In his response, Plaintiff contends that there are genuine issues of material fact for trial and that summary judgment should be denied. [*See* Doc. 18.] Defendant replies that Plaintiff's mere personal beliefs, conjecture, and speculation cannot support an inference of discrimination and his claims fail as a matter of law.

The Court has carefully considered the Defendant's motion, the parties' briefs, and supporting materials. [Docs. 17, 18, 22.] For the reasons set forth herein, the Court will deny Defendant's motion for summary judgment.

## I.    RELEVANT FACTS

Defendant is a transportation services provider serving primarily as a less-than-full-load freight carrier of general commodities and operates approximately seventy terminals throughout the United States, including a terminal in Knoxville, Tennessee ("Knoxville Terminal"). [Doc. 17-4 at 1.] Plaintiff is an African-American that has been employed as a "city driver" by Defendant since September of 1988. [Doc. 17-5 at 2.] "City drivers" pick-up cargo, make deliveries throughout the day, and are paid by the hour but are limited to working no more than sixty hours per week. [Doc. 17-4 at 1-2.] According to Plaintiff, he worked approximately 50 hours per week for Defendant during the years of 2005, 2006, and 2007. [Doc. 17-5 at 8.]

Defendant's "city drivers" select their routes or "runs" based on seniority, and Plaintiff is the second most senior city driver. [Docs. 17-4 at 2; 17-5 at 2.] The longest routes available out of the Knoxville Terminal are Mountain City, Tennessee, approximately 110 miles, one-way; Abingdon, Virginia, approximately 110 miles, one-way; Crossville, Tennessee, approximately 80-85 miles, one-way; and Athens, Tennessee, approximately 70 miles one-way. [Doc. 17-4 at 2.] A.Y. McDonalds ("AYM") is located in Elizabethton, Tennessee, and is on the Mountain City route. [Doc. 17-5 at 28.] Though AYM is located on the Mountain City route, it is not necessarily a stop on every Mountain City run. [*Id.* at 32.]

In the fall of 2005, Plaintiff alleges that he was no longer allowed to make deliveries to AYM. [*Id.* at 28.] During the relevant period, AYM's shipping supervisor was Susan

2

Dayton ("Ms. Dayton"). [Doc. 17-6 at 4.] Ms. Dayton supervised AYM's receiving activities, including the handling of shipments picked-up and delivered by Defendant. [*Id.*] According to Ms. Dayton, she banned Plaintiff from making deliveries to AYM because the "type of behavior that [Plaintiff] was exhibiting was general laziness," such as (1) spending "enormous" amounts of time in the AYM plant; (2) making personal phone calls from AYM's business lines that lasted from 20 minutes to one hour in duration; (3) behaving rudely toward Ms. Dayton; (4) napping; (5) having to be asked to leave after the trailer was loaded; and (6) socializing with AYM employees during work hours. [*Id.* at 26-27.] The "final incident" for Ms. Dayton allegedly involved Plaintiff's socializing with Linda Dixon ("Ms. Dixon"), an African-American employee of AYM supervised by Ms. Dayton. [*Id.* at 5, 27.] According to Ms. Dayton, Plaintiff "pulled [Ms. Dixon] away from her job and they went to another part of the warehouse." [*Id.* at 27-28.] According to Ms. Dayton, "that was enough" and she "made the decision that it would be best not to have [Plaintiff] coming to our plant." [*Id.* at 28.] Ms. Dayton has allegedly banned three drivers from delivering to AYM; two of the banned drivers are Caucasian. [*Id.* at 12.]

Ms. Dayton allegedly first complained to Defendant's employee, Wayne Hollingsworth ("Mr. Hollingsworth"), who informed the Knoxville Terminal Manager, Frank Rose ("Mr. Rose"), of the situation involving Plaintiff. [Doc. 17-7 at 2-3.] Ms. Dayton allegedly formalized her complaint in writing by sending an email to the Knoxville Terminal Manager. [Doc. 17-6 at 29-30.] According to Mr. Rose, he believes that Ms. Dayton submitted a written complaint, but the document is presently missing. [Doc. 17-7 at 3-4.]

3

Mr. Rose also recalls speaking to Ms. Dayton about Plaintiff's alleged "bothering" of AYM employees. [*Id.* at 8.] According to Mr. Rose, Plaintiff was not disciplined for the alleged incidents at AYM, but he was no longer allowed to work on the Mountain City route when AYM was a stop. [Docs. 17-5 at 29; 17-7 at 9.] According to Mr. Rose, at least two Caucasian drivers were denied particular runs due to customer complaints over their performance. [Doc. 17-3 at 1.]

According to Plaintiff, Mr. Rose never expressly stated that Plaintiff could not go to AYM because of his race. [Doc. 17-5 at 33.] Rather, Plaintiff contends that "he told me I couldn't go over there because [Ms. Dayton] was having problems with her black employee." [*Id.*.] Mr. Rose contends that they did not discuss AYM's "black employees." [Doc. 17-7 at 11.] After this meeting, Plaintiff alleges that the dispatcher would continually deny his requests for routes when AYM was on it. [Doc. 18-2 at 14.] On April 23, 2007, Plaintiff filed the complaint in this case. [*See* Doc. 1.]

## II.    ANALYSIS

### A.    Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party.

4

*Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Id.* at 249. The judge does not weigh the evidence, judge the credibility of witnesses, nor determine the truth of the matter. *Id.* Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## B.    Section 1981

Plaintiff first claims that Defendant violated Section 1981 when he was allegedly "refused job assignments . . . based on his race" and prevented "from enjoying the same job opportunities available to white employees on the basis of [his] race." [Doc. 1 at 3.] Section 1981 provides:

(a)    Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and

5

proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b)     "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981. In the present case, Plaintiff's employment discrimination claim falls within Section 1981's "make and enforce contracts" provision.

To establish a Section 1981 racial discrimination claim, a plaintiff must establish that: "(1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a)." *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006).

## 1.     Direct or Circumstantial Evidence

A plaintiff can establish the "intent" element either by direct evidence or inferentially with circumstantial evidence. *Id.* (citing *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir. 1985)). The Sixth Circuit has recognized that the direct evidence and circumstantial evidence paths are "mutually exclusive" and that a plaintiff "need only prove one or the other, not both." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000) (quoting *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)). Direct evidence refers to "evidence which, if believed, requires the conclusion that unlawful discrimination was at

least a motivating factor in the employer's actions" and "does not require the fact finder to draw any inferences to reach that conclusion. *Amini*, 440 F.3d at 359 (quoting *Kocak v. Cmty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 470 (6th Cir. 2005)). "Evidence of discrimination is not considered direct evidence unless a racial motivation is explicitly expressed." *Amini*, 440 F.3d at 359.

In the present case, the parties dispute whether there is direct evidence. In his deposition, Plaintiff testified that he "never heard" Mr. Rose state that he "can't go to A.Y. McDonalds because [he is] black." [Doc. 17-5 at 33.] Rather, he testified that Mr. Rose stated that he "couldn't go over there because [Ms. Dayton] was having problems with her black employee." [Doc. 17-5 at 5.] In his deposition, Mr. Rose testified as to the following:

> Q.      If Mr. Smith's recollection of your conversation is accurate, and it was said that the problem was problems with a black employee at A.Y. McDonalds, and that had something to do with Mr. Smith coming out there, would you have turned that in to human resources?

A.      Yes, sir, I would have.

[Doc. 18-5 at 5-6.] Plaintiff contends that this is direct evidence of discriminatory intent because it shows that Plaintiff's race was a factor in the decision to prevent him from making stops at AYM. The Court disagrees. To the extent Plaintiff relies on Mr. Rose's alleged statement regarding Ms. Dayton's problems with her "black employee," Plaintiff's own testimony acknowledges that this statement required further inference or interpretation when Plaintiff testified about what the statement "indicated" or "meant." [Doc. 17-5 at 33.] To the extent Plaintiff relies on Mr. Rose's testimony, the very nature of the question posed to

7

Mr. Rose is a conditional one, and his answer fails to "lead ineluctably to the conclusion" of racial motivation by Defendant. *Amini*, 440 F.3d at 359. For instance, one could interpret Mr. Rose's testimony as evidencing a lack of racial motivation. Because he did not report any incident to human resources, one could conclude that racial issues were not involved since he would have made a report otherwise. Thus, Mr. Rose's testimony, on its face, does not explicitly express racial motivation and "does not require a conclusion of unlawful discrimination." *Id.* Further inferences are needed to go beyond the conditional situation presented to and testified about by Mr. Rose. As a result, this is not a case involving direct evidence, and the Court will employ the circumstantial evidence framework to further evaluate Plaintiff's employment discrimination claim.

Under the circumstantial evidence framework, "the plaintiff must present a *prima facie* case, at which point the defendant must come forward with a legitimate, non-discriminatory reason for its action." *Id.* If defendant proffers such a reason, "the plaintiff has the burden of offering evidence that the defendant's justification is a pretext that masks its true discriminatory intent." *Id.* at 359-60; *see also McDonnell Douglas v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case, a plaintiff must show: (1) that he is a member of a protected class; (2) that he was qualified for his job and performed it satisfactorily; (3) that despite his qualifications and performance, he suffered an adverse employment action; and (4) that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. *Johnson*, 215 F.3d at 572-73.

8

### 2. Materially Adverse Employment Action

In the present case, Defendant first argues that it did not subject Plaintiff to a materially adverse employment action. Though Plaintiff alleges that he has suffered financial loss from being denied the Mountain City run, Defendant contends that Plaintiff has provided no evidence that his employment conditions have been adversely affected. According to Defendant, Plaintiff has the same position, the same job title, and the same level of seniority before he was denied the run. It is further argued that Plaintiff has consistently worked the same hours, can still work the Mountain City run when AYM is not a required stop, and has had the opportunity to select other routes of comparable length when the Mountain City run is not available. Plaintiff responds that he has suffered an adverse employment action by allegedly losing $2,000 per year from being denied Mountain City runs. He further contends that the adverse employment action element is satisfied by his alleged humiliation, embarrassment, and emotional distress. Defendant counters that Plaintiff's "bare assertion" that he suffered a materially adverse action is insufficient to establish inferential evidence of discrimination.

A "materially adverse employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). The change "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007) (citations omitted). Examples of a "materially adverse change" include

9

termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. *Id.* (citing *Ford v. Gen. Motors Co.*, 305 F.3d 545, 553 (6th Cir. 2002)). A reassignment accompanied by changes in Plaintiff's pay or work hours can sufficiently satisfy the adverse employment action criteria. *See Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002).

As an initial matter, the Court is unpersuaded by Plaintiff's contention that his alleged humiliation, embarrassment, and emotional distress alone constitute an adverse employment action. As discussed above, an adverse employment action requires a change in employment status. *See Ellerth*, 524 U.S. at 761. Though his subjective feelings may aid in determining whether an adverse employment action occurred, his feelings in and of themselves are insufficient to establish this *prima facie* element. *See Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (noting that a "bruised ego" was not enough to constitute an adverse employment action).

Nevertheless, the Court finds that Plaintiff has presented at least a genuine issue of material fact as to the materially adverse employment action element. Plaintiff testified that he lost "as much as $2,000 a year" from being denied the Mountain City run. [Doc. 18-2 at 38.] A loss in pay qualifies as an adverse employment action, as evidenced by Sixth Circuit precedent recognizing that money lost when a firefighter was repeatedly denied "acting time" would "more than amply qualify as a materially adverse action." *Jordan v. City of Cleveland*, 464 F.3d 584, 596 (6th Cir. 2006). While Plaintiff's alleged loss in pay is

10

arguably countered by Plaintiff's own testimony that he worked approximately 50 hours per week from 2004 to 2007 [*see* Doc. 17-5 at 8-9], this testimony is not necessarily inconsistent with his testimony that he was "in early many times over the other driver who ended up with the Mountain City." [Doc. 18-2 at 38.] Though the reduction in working time per week may not have caused Plaintiff to deviate from his general estimate of working 50 hours per week from 2004 to 2007, Plaintiff's testimony nonetheless indicates that there was some reduction in working time and, thus, some tangible reduction in his pay. While there is other evidence that Plaintiff had the opportunity to select routes of comparable distance to the Mountain City run, there remains a genuine issue of material fact regarding the comparability of those alternative routes in terms of the pay available from working such routes. Because Plaintiff is paid by the hour, the pay earned for running those routes would be affected by the frequency of runs to the alternative destinations and the number of stops on those routes as compared to the Mountain City run. For these reasons, summary judgment will not be granted based on the materially adverse employment action element.

### 3. Similarly Situated Individuals

Defendant next argues that Plaintiff cannot establish that he was treated less favorably than similarly situated, non-protected city drivers. In support of this argument, Defendant contends that, as in Plaintiff's case, two Caucasian drivers were denied particular runs due to customer requests. Defendant further argues that the record shows that AYM made similar driver requests regarding Caucasian drivers employed by Defendant and another company. Plaintiff responds that he has satisfied the similarly situated individuals element because

11

Caucasian employees were allowed to bid on their desired runs based on seniority while Plaintiff was not. Thus, the parties disagree on who constitutes a "similarly situated" employee for comparison purposes in this case.

To be deemed "similarly situated," the Sixth Circuit has recognized that "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). The "appropriate test" is to "look at those factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects." *Jackson v. FedEx Corporate Servs.*, 518 F.3d 388, 394 (6th Cir. 2008) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *see also Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 458 (6th Cir. 2004) ("In employment discrimination cases, the plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly situated;' rather, this court has held that the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'") (citation omitted).

In the present case, Defendant seeks to compare Plaintiff to other city drivers who were denied certain runs due to client requests while Plaintiff seeks to compare himself with other Caucasian city drivers who were not denied the Mountain City run. As an initial

12

matter, the Court notes that the "similarly situated" inquiry focuses on "individuals with whom the *plaintiff* seeks to compare his/her treatment." *Mitchell*, 964 F.2d at 583 (emphasis added). To the extent Defendant argues that Plaintiff should be compared to those Defendant contends are similarly situated, the Court believes such argument is more appropriate at the pretext stage rather than at the *prima facie* case stage. *See Jackson*, 518 F.3d at 396. Thus, the Court will focus the "similarly situated" inquiry on the individuals Plaintiff seeks to compare himself, namely, Caucasian city drivers permitted to bid on the Mountain City run.

After considering the factors discussed in *Mitchell*, the Court finds that there exists a genuine issue of material fact regarding the factor of whether Plaintiff's selected individuals for comparison "have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them." *Mitchell*, 964 F.2d at 583. More specifically, the evidence of Plaintiff's allegedly inappropriate behavior while at AYM could serve as a "differentiating circumstance" that would distinguish him from his selected individuals for comparison. [*See* Doc. 17-6 at 14-15.] On the other hand, Plaintiff testified that "no other accusations" were made when Defendant informed him that Ms. Dayton no longer wanted Plaintiff to come to AYM. [Doc. 18-2 at 36.] If Plaintiff were believed, there would be no "differentiating circumstance" between drivers allowed to bid on the Mountain City run and himself. Because "[r]easonable minds could differ as to whether a preponderance of the evidence" establishes the "similarly situated" element, the Court will decline to grant summary judgment on such basis. *Jones v. Potter*, 488 F.3d 397, 405 (6th Cir. 2007) (citations omitted).

13

### 3.    Pretext

Because certain *prima facie* elements have not been disputed and others are subject to genuine issues of material fact, the Court continues onto the next step of the burden-shifting framework.  A defendant "must come forward with a legitimate, non-discriminatory reason for its action."  *Amini*, 440 F.3d at 359.  In the present case, Defendant has proffered such a reason: "a valuable customer requested that Plaintiff not be permitted to return to its facility due to his unprofessional behavior while at that facility."  [Doc. 17-2 at 14.]

Because Defendant has satisfied its burden, Plaintiff must prove that Defendant's proffered nondiscriminatory reason was actually a pretext to hide unlawful discrimination. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008).  Plaintiff may establish pretext by showing: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the employer's action; or (3) the proffered reasons were insufficient to motivate the employer's action.  *See id.* (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).  The first showing "consists of evidence that the proffered bases for the plaintiff's discharge never happened."  *Manzer*, 29 F.3d at 1084. Under the second showing, a plaintiff "attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant."  *Id.*  To evaluate whether a plaintiff has created a genuine issue of material fact that a defendant's proffered reason did not actually motivate the defendant's challenged conduct, courts should examine "the evidence the plaintiff produces to establish a prima facie case, evidence discrediting the defendant's

14

proffered reason, as well as any additional evidence that the plaintiff chooses to put forth."
*Blair v. Henry Filters, Inc.*, 505 F.3d 517, 531 (6th Cir. 2007). The third showing ordinarily consists of evidence that other employees, particularly employees not in the protected class, were not subject to an adverse employment action even though they engaged in substantially identical conduct to that which the employer contends motivated a defendant's actions toward a plaintiff. *Manzer*, 29 F.3d at 1084. The Court notes that evidence produced to support the *prima facie* case may, but will not necessarily, suffice to show a genuine issue of material fact concerning pretext. *Blair*, 505 F.3d at 533.

In the present case, Plaintiff argues that his alleged behavioral misconduct was never brought up when he was denied Mountain City runs and that Mr. Rose only discussed racial issues were him. Defendant contends that Plaintiff's contention that only racial issues were discussed with Mr. Rose is suspect since Plaintiff testified that neither Mr. Rose nor anyone else told Plaintiff that he could not go to AYM because he was African-American. As a result, Defendant argues that Plaintiff's mere speculation that Ms. Dayton told Mr. Rose that she did not want Plaintiff at AYM due to racial issues is insufficient to find pretext in this case. The Court also notes that Defendant's briefing discusses Caucasian drivers who were denied certain routes due to client concerns regarding those drivers' behavioral conduct. Such evidence would go toward countering the third showing of pretext. However, for the reasons below, Plaintiff has presented sufficient evidence to overcome summary judgment on the issue of pretext.

When viewing the evidence in a light most favorable to Plaintiff, there is a genuine issue of material fact at the pretext stage. Plaintiff has testified that Mr. Rose "told me I couldn't go over there because she was having problems with her black employee." [Doc. 18-2 at 17.] While Defendant contends that finding racial discrimination based on this statement alone would require mere speculation, this argument is belied by Mr. Rose's testimony that he would have turned the matter over to human resources if Ms. Dayton had said there was a problem with an African-American employee at A.Y. McDonalds and that had something to do with Plaintiff coming out there. [Doc. 18-5 at 5-6.] In other words, Mr. Rose's testimony indicates that he would have considered what Plaintiff contends is true as concerning enough for human resources to become involved. Though Mr. Rose has testified that he made no such statement, weighing the testimony by Plaintiff and Mr. Rose should be performed by the finder of fact and not by this Court at the summary judgment stage. Plaintiff's pretext argument is further supported by his contention that "[t]here was no other accusations made" when he was informed that he could no longer make stops at AYM. [Doc. 18-2 at 3.] To the extent that Defendant contends that it honestly believed Ms. Dayton's complaints regarding Plaintiff's improper behavior, Plaintiff has testified that Mr. Rose discussed racial issues when informing Plaintiff that he was no longer allowed to make stops at AYM. [Doc. 18-2 at 17.] This testimony indicates Mr. Rose's awareness of Ms. Dayton's alleged racial concerns and, thus, runs counter to Defendant's argument that it honestly believed Ms. Dayton's behavioral complaints against Plaintiff. Again, though

16

Defendant has presented evidence countering Plaintiff's testimony, such differences are best left for the finder of fact to resolve.

Because Plaintiff has presented sufficient evidence, summary judgment will be denied as to Plaintiff's Section 1981 claim.

## C.    THRA

In his complaint, Plaintiff alleges that Defendant violated the THRA's prohibition on racial discrimination at work because he was allegedly prohibited from enjoying the same job opportunities available to white employees due to his race.  [Doc. 1 at 3-4.]  The THRA provides:

(a)    It is a discriminatory practice for an employer to:

(1)    Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin . . . .

Tenn. Code. Ann. § 4-21-401(a)(1).  In its motion for summary judgment, Defendant contends that Plaintiff's THRA claims are barred by the statute of limitations.  Defendant also argues that, like his Section 1981 claim, Plaintiff cannot prevail on the merits of his racial discrimination claims under the THRA.

### 1.    Statute of Limitations

The THRA provides that "[a] civil cause of action under this section shall be filed in chancery court or circuit court within one (1) year after the alleged discriminatory practice ceases."  Tenn. Code Ann. § 4-21-311(d).  Defendant contends that Plaintiff's claims for

racial discrimination are barred by the THRA's statute of limitations. Defendant further contends that the continuing violation exception is inapplicable because it does not extend the limitations period on discrete acts of discrimination. Plaintiff responds that Defendant's refusal to allow Plaintiff to go to AYM is a case involving ongoing discrimination that "continues to this day." [Doc. 18 at 6.]

The parties do not dispute that the initial decision to no longer allow Plaintiff to make stops at AYM occurred more than one year before Plaintiff filed this action on April 23, 2007. Rather, they dispute whether the continuing violation doctrine is applicable and permits Plaintiff to seek relief under the THRA. According to the Tennessee Supreme Court, the "continuing violation doctrine essentially allows a plaintiff to bring a claim for discriminatory conduct that occurs outside the limitations period if the discriminatory conduct is sufficiently related to conduct occurring within the limitations period." *Booker v. The Boeing Co.*, 188 S.W.3d 639, 643 (Tenn. 2006) (citation omitted). Under the continuing violation doctrine, courts are permitted to assert jurisdiction over charges of discrimination occurring outside the limitations period and are allowed to fashion a remedy extending beyond the limitations period. *Id.*

In its supporting brief, Defendant contends that a continuing violation can only be found when a plaintiff demonstrates a longstanding and demonstrable policy of discrimination. However, the Tennessee Supreme Court has recognized two instances in which the continuing violation doctrine applies:

The first category arises where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation, for example, where an employer continues to presently impose disparate work assignment[s] or pay rates between similarly situated employee groups. Key to establishing this exception is proof that at least one of the forbidden discriminatory acts occurred within the relevant limitations period.

The second category of "continuing violation" arises where there has been a longstanding and demonstrable policy of discrimination such as an established and repeated pattern of paying men more than women. To constitute such an established pattern, the plaintiff must clearly demonstrate some "overarching policy of discrimination," and not merely the occurrence of an isolated incident of discriminatory conduct.

*Booker*, 188 S.W.3d at 643 (alteration in original) (citations omitted) (emphases removed).

Thus, even if Plaintiff has not met the second category as Defendant contends, Plaintiff's contention that the alleged discrimination "continues to this day" indicates potential application of the continuing violation doctrine under the first category.

Notably, the continuing violation doctrine does not apply to "discrete incidents" or individual acts of discrimination; it applies when discriminatory acts take place over time. *Id.* at 643-44. "Discrete" refers to something that is "separate and distinct; not attached to others; unrelated." *Id.* at 648. In *Booker*, the Tennessee Supreme Court recognized that payments of salary were part of an ongoing course of conduct. *Id.* While still recognizing that a single discriminatory paycheck would constitute a discriminatory act, the Tennessee Supreme Court also recognized that a discriminatory pay rate fell within the scope of the continuing violation doctrine. *Id.* Because the THRA statute of limitations begins "after the alleged discriminatory practice ceases," the Tennessee Supreme Court found that a "discriminatory pay rate 'ceases' when it ends, not when the employee's awareness of it

should alert him or her to assert his or her rights." *Id.* Thus, the Tennessee Supreme Court concluded that discriminatory pay is a continuing violation under the THRA. *Id.*

In light of *Booker*, the Court finds the continuing violation doctrine applicable to Plaintiff's THRA claims. The first category of continuing violations includes cases "where an employer continues to presently impose disparate work assignment[s]" and where "at least one of the forbidden discriminatory acts occurred within the relevant limitations period." *Id.* at 643 (alteration in original) (citations omitted). Plaintiff's THRA claims are akin to the imposition of disparate work assignments contemplated in *Booker*. Plaintiff alleges that he has continually been denied the Mountain City route since the original decision in 2005 and that such practice continues to this day. Thus, the alleged repeated denials of the Mountain City run are "part of an ongoing course of conduct." *Id.* at 648. Accordingly, the continuing violation doctrine is applicable to the present case, and Plaintiff's THRA claims are not barred by the statute of limitations.

### 2. Racial Discrimination Claim

Defendant argues that Plaintiff cannot set forth a meritorious claim of race discrimination under the THRA. In supporting this position, Defendant employs the same arguments the Court previously addressed in relation to Plaintiff's Section 1981 claim. Notably, the Tennessee Supreme Court has recognized that the analyses for THRA and federal civil rights claims are the same. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996). Accordingly, the Court incorporates the Section 1981 analysis discussed

above to Defendant's challenge of Plaintiff's THRA claims.  Accordingly, Defendant's motion for summary judgment will be denied as to Plaintiff's THRA claims.

## III.    CONCLUSION

For the reasons set forth herein, Defendant USF Holland, Inc.'s motion for summary judgment [Doc. 17] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE